UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

JAN 2 0 2023

Nathan Ochsner, Clerk of Court

HELEN TYNE MAYFIELD,
          Plaintiff

Vs.

                                  Civil File No._____

COMERICA BANK& CO.
COMERICA BANK N.A.
SCOTT E. HAYES, Individially,
RICHARD WORTHEN, Individually
John Doe, Bank Manager, individually
Jane Doe, Bank Manager, Individually,
          Jointly and Severally

*HM Chris Burrell*
*1/20/23*

## **COMPLAINT**

**COMES NOW,** Plaintiff, Helen Tyne Mayfield, Pro Se, and brings this action against Defendants Comerica Bank & Co., Scott Hayes, individually, The Bank Manager at the San Felipe Branch and the Gessner Branch, Richard Worthen, the maker of the check who refused to make the check good, collectively and as grounds thereof alleges a follows:

## I.    **INTRODUCTION**

1.  Helen Mayfield is a former lawyer and Social Worker.  Until she was

     wrongly convicted of a crime and disbarred by a jury trial in abstentia in

     which she is challenging as she was never served with the indictments,

     answered the indictment or participated in the trial at any time, she had an

     outstanding professional career.  She had been a Southern Baptist

     Missionary and aspired to be a Nun. Upon deciding not to be a Nun, she

     became a Social Worker. She was valedictorian of her high school class,

Class President and an officer in every student organization of her school. In college, she was on the Dean's list for every semester except one until her senior year. She was a member of Phi Beta Kappa Honor Fraternity, and worked as a grader in the English, history and government and Psychology and Guidance and Counseling office as an undergraduate. She received a Bachelor's degree from the University of Texas in Austin, Texas in 1975.

2. She was accepted in the Doctoral Program in Social Work at UT/Austin in Administration, Planning and Program Development and later transferred to Wayne State University where she spent one year at the University of Michigan and one year at Wayne State University where she graduated with a Master's in Social Work in 1977. She had a 3.6 grade point average despite having surgery for cervical cancer and her son having open heart surgery while she was in graduate school which allowed her to take the Honors exam for executives or the Honor's Program for the state and she made a perfect score on the Texas Exam for Social Workers and the Michigan Honors Program. She was recommended to teach upon Graduation and was employed as an adjunct professor at the University of Detroit, and Field instructor at the University of Michigan and Wayne State University. She was administrative Assistant to the Director of Harold Center, the Young Adult Program for the State of Michigan and later the

Acting Deputy Director. She was later hired as the Regional Liaison for the Developmentally Disabled for the State of Michigan where she was administratively Responsible for the four inpatient and four outpatient (DD) hospitals, DD Area and Advisory groups, the 258 CMH Board, PRR and PRI's for the State of Michigan, the Family Support Grant and later Nursing Homes for Wayne County.  She was also a trainer in Family Court for judges and staff for "How to Work with the Culturally Different" and Consultant on Aging for the City of Southfield Michigan. She did additional training in Family Therapy with the Southeastern Family Institute affiliated with the Nathan Ackerman Family Institute in New York. She taught Principles of Family Therapy and Social Work Practice. She was a Social Worker for more than 35 years before moving to Texas. She graduated from law school in 1987. She was licensed as a Social Worker in 1977 in Michigan. She became an ACSW in 1977 and was Board Certified to access adults and children for their need for psychiatric care and worked parttime in emergency rooms in Michigan for extra money to support her family as a single parent. She was also CAFAS certified to access and at the time was one of only approximately one hundred therapist in the United States with this certification at the time. In Michigan, she never had a single complaint filed against her by an agency or individual.  She was well respected in her

field and was the spokesperson for the Detroit Medical Center on how to cope with trauma after 9/11. She interned at the 14th Court of Appeals and for the federal judge Hugh Gibson of the Southern District. She passed the state bars in Michigan and Texas and was licensed to practice law in Texas in 2/1999. She practiced law from 2002 to 2008 and was disbarred without a hearing or service of process in July 31, 2012. She had an outstanding legal career until this time. She has a case cited in the Federal Reporter, won cases in 5th Circuit, U.S. District Court and represented clients in federal court in district, bankruptcy and adversarial proceedings. She won an appeal in the 1st District Court which was upheld by the Texas Supreme Court and is cited in the 2004 Family Code. Until, 2007, when Mayfield was falsely accused and convicted of a crime, she had never been charged or convicted of anything except unpaid parking tickets and had a $12.00 check returned on uncollected funds for which she received a full pardon from the Governor of Texas. As a Social Worker, she was a therapist in private practice and worked at Family and Children's Services of Oakland as well as several community mental health agencies in Michigan. After disbarment, Mayfield has volunteered at Food Banks for seven plus years and begun to take bridge, Spanish, and French classes, kickboxing, yoga, Thai Chia and help others. While in graduate and law school, I helped others by

volunteering in churches. I was not paid for any of those jobs for which I was volunteering. As a lawyer, I used to work as a substitute teacher whenever possible as a community service. I routinely did pro bono work for legal clients. I was a catechist instructor for more than twenty years for my church and taught confirmation classes. Since my wrongful incarceration, I have been very sensitive about lawyers abusing clients. I completed work in Gerontology and this was why I was appointed to Administrate Nursing Homes in Wayne County. The elderly and preventing elder abuse has been a lifetime interest of mine since I worked in the first Adult Protective Services Program in Texas in 1972. My field instructor and I designed and got approved a home dialysis program with the VA Hospital in Ann Arbor. I scored 99 on the state exam in Texas and I was the first Black Social Worker in the Family Program in Dallas in 1972. I was elected Co-Chairperson of the union at Family Service and with other agencies formed the first Human Services Union in Michigan, AFSME 35. I was vetted and bonded most of my professional career. In law school, I was Justice for Phi Alpha Delta Legal Fraternity, a member of the student faculty Advocacy Committee and an Associate Editor of the International Law Journal.

3.   Mr. Worthen and I met at a Community Center in 2018. We took bridge
lessons and played party bridge on Monday and Friday. We took bridge
classes on Wednesday. We did not know each other beyond bridge. We did
not discuss anything personal at any time. We are on a clock in bridge and
rounds are timed. Talking is frowned upon. One day after about a year and a
half, I saw Mr. Worthen standing in the day area. He was very upset and was
complaining about how poorly he was being treated by his lawyer. He had
been stood up two times before and had been promised that the attorney
would meet him today. The attorney did not show.  I inquired as to what his
problem was. He told me that his wife had died and he had paid an attorney
and he had not done anything for him as to the $577,000.00 given to the
American Cancer Society. I inquired about the problem and learned that he
and the woman in question had never been legally married. The Letter of
Testamentary had been cancelled or dismissed as he had never filed the
inventory. I got on the phone and learned what had to be done.  I told him
that I could not practice law and I did not know what could be done. I would
call an old professor and learn about the law and get a referral for a lawyer
in this area if possible. Professor Johanson would know what could be done.
Worthen said he had a 401k from which he wanted to obtain half of the
funds.  I would later learn that it was not a 401k. It was an IRA and the one

year statute had expired and the funds could not automatically be split without a court order. This was a problem. The person assigned to the funds by the investment company reported that he had spoken to the attorney four times and left messages and the attorney never followed up on his promises to obtain a TRO to stop the fund transfer until matters could be resolved.

4. I explained the problem to Mr. Worthen. I explained that I was not an attorney. I could try to mediate and persuade American Cancer Society to resolve the matter without litigation. Otherwise, an attorney must be hired to resolve the matter. I told him that I had helped only one friend before since I was no longer an attorney by becoming his power of attorney and agent and working out five or six warrants and helping him sell his house. I had gone to undergraduate school with this friend. We could try this again but we had to have documentation of living together and we had to try to meet the terms for an informal marriage first. He needed to get sworn statements from friends or witnesses to the relationship before proceeding.

5. Several weeks went by and the matter was never mentioned. Then he came in one day out of the blue with sworn affidavits from people stated that he and she had called themselves man and wife from time to time. We went to the bank and got the agency agreement and power of attorney notarized along with the inventory. The inventory was filed. The judge would not sign

the inventory without a hearing.  The attorney at the hearing agreed to do the inventory.  The judge made me leave the courtroom and talked to the attorney and Worthen alone.  He set a new hearing date and gave the attorney time to file the inventory.  The attorney told me that he had not done anything because he had interviewed their friends and felt that Worthen would lose in a legal battle. Litigation was not the answer: He would lose based on his investigation and the facts. Worthen could not win in a court battle or litigation.  I agreed to help Worthen for a flat rate of $25,00.00 if successful.  The amount of the estate was $1.2 million. Worthen told me that she was merely his girlfriend and they never intended to be married.  He told me that he wanted me to try to persuade the American Cancer Society to split the funds.  I contacted the company in writing and on the phone several times a week.  It took seven months to persuade American Cancer Society to split the funds.  In the meantime, several agencies that I notified of funds agreed to consider splitting funds and obtained information and secured the funds and did not split with Mr. Worthen. PBS of UH was one such agency. I had friends to prepare TRO's which were granted until matters could be worked out. In the meantime, Worthen had an accident and injured himself. He had money but refused to spend it on a rental car. He could not drive his truck.  He asked me if I would take him to the doctor. I agreed to do so and

spent more than a half of a day on one occasion. I also went with him to traffic court and was able to obtain a reduced fine and negotiate such that the accident would not appear on his record. He later called me and asked if he got a ride to bridge, would I take him home until he could get his truck repaired. I agreed to give him rides and even on one occasion took him grocery shopping and waited for him.  I was not paid for the trips.  I was not even given gas money or paid for my time by Worthen. I made five trips to various courts with him before four different judges. I spent two weeks effectuating a transfer of the funds from the girlfriend to Worthen.  I obtained an EIN number and helped him complete two 28 page documents. These were laborious and time consuming. They were two or more hours each time. I did all of the mailing and filing of documents. I was not paid for my time. At all times Worthen knew that I was not an attorney and would hire one if necessary to assist us per the agency agreement. Finally, the transfer was complete and I asked to be paid. He gave me a check made wholly in his handwriting.  I took this check to Comerica Bank on San Felipe and they refused to deposit the check in my account or cash it.  The funds were there because I had gone around to all banks and credit unions and made sure the funds had been sent to Comerica. I had verified the funds with the bank manager at Comerica, the Gessner branch, Worthen's bank.

The case is beirng litigated in state court. I later learned that I was in the wrong court. Comerica is a national whose corporate 0ffice financial is located in Dallas,Texas  The state court did not have jurisdiction to resolve the matter, The managers at my bank and Worthen's bank requested to know what I had done to earn my funds. One manager felt that $25,000.00 was too much to be paid for obtaining $700,000.00 for him as I was not an attorney. I had not negotiated alleging to be an attorney. Our agency agreement expressly stated that we were not in an attorney-client relationship. I was even asked to show the bank the file of the case which I did.  The manager of the San Felipe branch then defaced the check so that it could not be cashed, stating Comerica would not cash the check unless Worthen was with me. I called Worthen and he stated that he would give me the money on Monday.  We agreed to meet on Monday at 9 am. We met and he refused to pay me in certified funds or at all. He stated that he would only give me $2000.00 of the money owed me. The bank manager told me that he did not have to pay me at all for any of my services and time.  I left the bank and filed a lawsuit.

6. I felt that I was being discriminated against by Comerica staff because of my race.  I have had an account with Comerica Bank since 1978 and have never had any problems. In Michigan, I deposited checks in the amount of

$10,000.00 and $38,000.00 and had no problems. In Texas, I was black, female, a lawyer and social worker. White officials and bank personnel denied me services granted to Worthen. The bank did not have any problem with him depositing checks in excess of $25,000.00. I had facilitated those deposits. This was blatant racial discrimination on the part of Comerica Bank and its officials. I filed this action to recover the value of the check which was defaced and damages pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C, §, et seq., as amended, ("Section 1981").

## II.    **JURISDICTION**

7.  This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because it arises under a statute of the United States, specifically Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § et seq., as amended, ( "Section 198") which forbids racial discrimination against any person in the "making, performance, modification and termination of contracts, and the employment of all benefits, privileges, terms, and conditions of the contractual relationship."

8.  Plaintiff further  invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (a) over any and all state law claims and causes of action

that derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally-based claims and cause of action.

## III.   VENUE

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, subsections (b)(2), (c)(2), and (d) because Defendants Comerica Bank, et al is deemed by statute to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to this civil action, and/ or in any district within Texas which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.  Defendants Comerica does a considerable and substantial amount of business in this District, employs Numerous persons within this District, and regularly solicits business from the citizens of the District.  Upon information and belief, individual Defendants Comerica Bank managers continue to business within and from this District, Scott E. Hayes `is employed at Vincent Serafino and may be served at 1601 Elm St. Suite 4100, Dallas, Texas 75201, Richard Worthen continues to live in Harris County at the same address. The bank managers continue to work for Comerica, serve and seek to serve the citizens of this

District and otherwise avail themselves of the benefits of the District. In addition, venue in this District is proper because the incident in question occurred in this District and therefore a substantial part of the events or omissions giving rise to the claim occurred here in this District.

## IV.  **PARTIES**

10. Plaintiff, Helen Tyne Mayfield was and is a U.S. citizen, over the age of eighteen years and a person with standing to bring a claim under Section 1981.S

11. Comerica Bank may be served through its agent Susan Schmidt, V.P or whomever is taking her position at P.O. Box 650282, Dallas, Texas 75265.

12. The Comerica Bank managers may be served at their respective addresses of  6412 San Felipe, Houston, Texas 77057 and 2820 Gessner St., Houston, Texas 77080 or wherever they may be found.

13. Richard Worthen may be found at 10135 Kemp Forest, Houston, Texas 77080.

14. Comerica Bank where Mayfield opened her account in 1978 is located in Detroit, Michigan. Comerica has banks in New Jersey, California, Arizona, Michigan and Florida. It also has banks in Mexico and Canada. The primary headquarters for its financial corporation is located in Dallas, Texas.

## V.    FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

15.  Plaintiff, Helen Mayfield provides in this section the general substance of certain factual allegations.

16. Plaintiff has been banking with Comerica Bank since 1978.  She took this check in to be deposited or cashed.  The clerk referred me to the manager who asked a lot of questions and wanted to know why I was being paid the amount of money as the check. I went to my car and got the file and showed him that I had a contract and I had performed my end of the contract and was paid for my services. I showed him that the contract was completed that day with the transfer of funds from the IRA with American Cancer Society as beneficiary to Richard Worthen. I had a breakdown of all the funds. The power of attorney and agent agreement were part of the file.  I was not asked any questions by the male manager.  The manager took more than an hour and then wrote across the from of the check so that it could not be cashed and told me that he was not going to cash this check. I would need to bring Mr. Worthen with me to get this check cashed.  I asked him to call Worthen and he refused. I called Worthen and turned the speaker on and he could hear Richard state that he would give me another check on Monday but I

would need to come to the bank where he lived. I agreed. On Monday, we went into the bank together on 2820 Gessner Rd., Houston, Texas 77080.

17. Richard told the manager that he never agreed to pay me and that I had just been doing him small favors. They spent several hours talking to someone and then they called me in and the manager told me that Mr, Worthen did not have to pay me anything for my services. They had spent the morning talking to lawyers and this was what they had been advised. I could accept $2000.00 or get nothing. I walked out of the bank and filed this lawsuit.

18. Mr., Hayes filed a motion to strike my jury demand which was granted by using the form from my opening a savings account which had been altered and a date put on the form by someone other than myself and was not initialed as such.  I submitted discovery requesting a copy of the contract with the bank which he stated supported his claim and he never produced a contract or any documents to support his claim. He did not plead an affirmative defense.  Upon filing a motion for summary judgment he filed an affirmative defense that he had not pled in his answer or a claim citing a California case.  His summary judgment was granted with not a scintilla of evidence to support the bank essentially tearing up the check that was written wholly in the handwriting of Richard Worthen and a contract and power of attorney to support Plaintiff's claims. Plaintiff appealed but

because Plaintiff has been exposing the corruption in the judicial system and it racial bias, no court in Texas will listen to her claims. All courts are fully aware that Mayfield has not committed a crime in Texas for which she had any criminal liability at the time of her arrest and prosecution.

19. Mayfield was subjected to racial animus and bias on the part of the state court trial judge and Worthens attorney who feels that Mayfield should not be allowed to work in any capacity and he has orchestrated her firing from her job with Harris County where she had worked since 2002. He feels that demonizing Mayfield for only obtaining $700,000.00 of the 1.2m estate was incompetence. Worthen had three attorneys at various times and they did not obtain a dime for him. Worthen's counsel argues that obtaining only $700,000.00 makes Plaintiff a scam artist. This same attorney does not appear to know what type of funds these were after more than three years and refers to the funds as 401k when they were IRA funds subject to IRS rules. Plaintiff has been a social worker for 50 years and this is the first time anyone has ever made a complaint about her services and she has received numerous commendations for her good work. Ex.1  Worthen's counsel argues that Plaintiff should not exercise, take yoga, kickboxing, French and Spanish classes for free to seniors as she is taking advantage of the other class members and is scamming them by taking these classes and playing

bridge and dominos. He does not cite any basis for this assertion and is not aware of the Codes of Professional Responsibility that he is violating. The source of his animus is racial hatred of Mayfield. Since he has been involved in the case, Mayfield's house has been burglarized five times and all of Worthen's records have been stolen.  Someone has been calling Plaintiff stating that he is a retired police officer and he is going to make a complaint or have Plaintiff thrown  in jail for helping Worthen. He states that Worthen does not want the funds that I assisted him in getting. Worthen has never told me this and he has not asked me to give the funds back to American Cancer Society. Worthen simply does not want to honor our contract. The attorneys for Comerica and Worthen have used deceit and criminal conduct of forgery and alteration of court documents to obtain judgments in state court with the assistance of the state court judge. It is my belief that either he or the judge or they were acting together as he responded to a notice that was never served on him or e-filed and she issued an order on a notice that I had not filed and refused to respond to my actual notice of March 25, 2022. There was a smell to their conduct. Plaintiff believe the sole basis of their conduct was racial animus.  A protective services referral was also made and dismissed. Defendants Comerica Bank did not make good the check with interest and Worthen has not paid anything but filing fees. He has never paid

Plaintiff for her time or gas money. Plaintiff worked for Worthen for seven

months. Plaintiff was relying on payment to clear her name and obtain a car.

The case has been set for trial for January 9, 2023 for ten days. If it is not

reached, a new trial date should be set. On January 13, 2023, Worthen filed

a Motion for Summary Judgment. The time for filing dispositive motions

has passed and he did not obtain leave of court. Mayfield has been

discriminated against by Comerica Bank and the Texas judicial system.

Worthen's counsel appears to be arguing that Mayfield is not entitled to

normal rights of citizenship to contract and litigate when she has been

wronged by another. Plaintiff believes that this is based on her race.

## VI. CAUSES OF ACTION AND DAMAGES

### COUNT I:

### COMPENSATORY AND PUNITIVE DAMAGES AND ATTORNEY FEES PURSUANT TO 42. U.S.C.§1981

20. Plaintiff repeats, realleges, and fully incorporates each and every allegation

contained in Paragraphs 1through 20 of this Complain as though such

allegations were fully set forth herein.

21.Plaintiff had a right under Section 1981 of the Civil Rights Act of 1866, as

amended, 42 U.S.C. § 1981, et seq. to be free from discrimination based on

her race in the "making, performance, modification an termination of

contracts, and the enjoyment of all benefits, privileges, terms, and conditions

of the contractual relationship," including the relationship she sought with Wortthen and Comerica.

22.  The Defendants acted out of racial animus in denying Plaintiff the right to deposit a check or cash it. They could had deposited the check but not paid it out until cleared. However, Comerica was the bank for both parties and would know whether the check could be paid. Comerica acted out of racial animus in denying Plaintiff her federally protected rights and intentionally treated her in a base, criminal and subhuman manner at the San Felipe and Gessner branches. Their discriminating and humiliating treatment of her were utterly unacceptable in a civilized society and were an affront to the values that society expects in the treatment of all persons, especially those who seek to do business in banks licensed by the United States government and enjoy the privileges of operating retail community banks under federal regulations. Moreover, Defendants' various intentional acts that both wrongfully denied presentment and deposit of the check and the destruction of the check without compensation and that obfuscated the identity of the Branch Manager, are additional acts of racial discrimination that are violative of the aforesaid federally protected rights and are unacceptable in a civilized society. The personal animus and defamation of character of the

Plaintiff by the counsel of Worthen is unacceptable and violates the Code of Professional Responsibility.

23. The Defendants are liable to Plaintiff, jointly and severally for compensatory damages under 42 U.S.C. § 1981 for their intentional acts and omissions that caused Plaintiff to sustain and endure severe emotional distress, mental anguish, disgust, revulsion, embarrassment, disparagement, shock and utter humiliation, in the amount in excess of one million dollars or to be determined by the trier of facts.

24. Both Comerica Managers individually, personally acted with malice ad /reckless indifference towards Plaintiff's federally protected rights, singling her out for discriminatory treatment based upon her racial classification and /or gender (because she is an Afro-American female)- humiliating her, and attempting to obfuscate and conceal the names of the managers in question for the purpose of preventing her from enforcing her rights. For example when Plaintiff's apartment was repeatedly burglarized and her legal files were stolen each time, Plaintiff requested that the defendants allow her copies of the documents sent to her by each of them at her expense and she was denied. Accordingly, the Defendants ae liable to Plaintiff, jointly and severally, for punitive damages under 42 U.S.C. § 1981 because their conduct was based on malice and /or reckless indifference to Plaintiff's legal

rights- in an amount of at least 1,000,000.00 or as to be determined by the trier of facts.

25. Plaintiff if Pro Se at this time but she may have to hire an attorney.  Plaintiff is entitled to recover those attorney fees and cost in accordance with applicable federal laws.

### COUNT II
### COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

26. Plaintiff repeats, realleges, and fully incorporates each and every allegation contained in Paragraphs 1through 20 of this Complaint as though such allegations were fully set forth herein.

27. The aforesaid acts and omissions by Defendants and the other Comerica employees were utterly intolerable in a civilized society, were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress would result and were conducted with reckless indifference to the likelihood that emotional distress.  They therefore constitute the tort of intentional infliction of emotional distress.

28. The Defendants and Comerica employees and both branches of San Felipe and Gessner personally acted with malice and reckless indifference towards Plaintiff's federally protected rights, singling her out for discriminatory treatment because she is an Afro-American female- humiliating her, and

lying to her to prevent her from enforcing her rights. Accordingly,

Defendants are liable to Plaintiff, jointly and severally, for compensatory

damages under applicable state laws because their conduct was based on

malice and/or reckless indifference to Plaintiff's legal rights, in an amount of

at least $1,000,000.00 or as determined by the trier of fact.

## COUNT III.

## VIOLATION OF TEXAS PENAL CODE 32.46

29. Plaintiff repeats, realleges, and fully incorporates each and every allegation

    contained in Paragraphs 1through 20 of this Complain as though such

    allegations were fully set forth herein.

30. The aforesaid acts and omissions by Defendants and the other Comerica

    employees were utterly intolerable in a civilized society, were malicious

    and/or were conducted with reckless indifference to the likelihood that

    emotional distress would result and were conducted with reckless

    indifference to the likelihood that emotional distress.

31. Both counsel for defendant's counsel appear to have engaged in deceit to

    obtain a judgment in violation of Texas Penal Code 32.46 and the state court

    judges disregarded the criminality of their conduct. When theft by deception,

    fraud by deception or criminal trespass is characterized by the criminal

    conduct prohibited by section 32.46 of the Texas Penal Code ( securing

execution of documents by deception), section 41.008© of the Texas Civil

Practice an"d Remedies Code provide that the cap on exemplary damages

does not apply in such circumstances.  The Supreme Court has noted that

"trickery and deceit" are more reprehensible than negligence.  See BMW of

N. Am. V. Gore, 517 U.S. 575, 134 L.Ed. 2d 809, 116 S.Ct. 1589, 116

S.Ct.(1996). The high Court went on to explain that intentional malice can

be the deceptive element in a "close and difficult case" and the most

important idicium of the reasonableness of a punitive damages  reaward is

the degree of reprehensibility of the defendant's conduct, see Gore, 517

U.S.at 575. This Court should impose damages on Comerica that reflect "the

enormity of his Day v. Woodworth, 54 U.S. 363, 13 HOW 363,371. 14L.

Ed. 181 (1852). This principle reflects the respected view that some wrongs

are more blameworthy than others. Id. There is no doubt that conduct of the

defendant in not presenting the contract and other documents requested in

discovery was not an error and was carried out in criminal deception.

Plaintiff asserts that the damages, which are rapidly occurring in this case in

which Comerica damaged the check so that it could not be cashed by another

bank are worthy of assessing necessary exemplary damages and that they

should be assessed to restrain the continuing and recurring conduct of the

Defendant, see United States v. Wells Fargo Bank, NA (D.D.C., Civil

Action Number 1:12 CV-01150) (July2021) discrimination against minorities). The conduct of Comerica Bank might be deemed to be the discrimination against minorities. There was no basis for the denial of Comerica Bank in depositing or cashing the check for the Plaintiff as it had been lawfully earned and obtained. There were no violations of warranty of presentment and no allegations of fraud.

## COUNT IV.

## BREACH OF CONTRACT, QUANTAM MERUIT, FRAUD IN THE INDUCEMENT

32. Plaintiff repeats, realleges, and fully incorporates each and every allegation contained in Paragraphs 1through 20 of this Complaint as though such allegations were fully set forth herein.

33. The aforesaid acts and omissions by Defendants and the other Comerica employees were utterly intolerable in a civilized society, were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress would result and were conducted with reckless indifference to the likelihood that emotional distress. Both defendants were fully aware of the consequences of their actions and the existence of a contract. They are not alleging that they were not aware of the existence of a contract or that Worthen lacked the capacity to contract. Worthen received

the benefits of Plaintiff's negotiating skills learned as a union negotiator and Mediator and did not want to pay for the services after all.

34. Both Comerica Bank and Richard Worthen breached their respective contracts with Plaintiff. Both contracts were written. Comerica Bank refused to present a copy of the contract that supported his motion to strike a jury. When Plaintiff opened a savings account she requested a copy of the said contract and was told that no such contract existed. Plaintiff was told that her account had been opened in 1978 and those terms did not exist at that time. Plaintiff confided in Worthen that she needed the funds for a car and to clear her name and pay for her appeal to Capitol One Bank. Worthen later called the Plaintiff and told her that he had talked to a friend and he had recommended a Hyundai as there were easy to maintain and not so costly. Both defendants were fully aware of the importance of this contract to Plaintiff. Worthen benefited from the contract and never intended to pay for the services he received. This is unjust enrichment and fraudulent inducement on his part.

## VII.  JURY DEMAND

35. Plaintiff respectfully requests trial by jury in this matter.

## VIII.  PRAYER

36. **WHEREFORE,** Plaintiff demands judgment against Defendants Comerica

Bank , the bank managers and Richard Worthen jointly and severally, for

breach of contract, quantum meruit, fraudulent inducement of a contract,

compensatory damages of at least$1,000,000.00 or in an amount to be

determined by the jury at trial, for punitive damages , attorney fees if she the

Court shall deem just and proper.

**Date: January20, 2023.**

Respectfuly submitted,

Helen Tyne Mayfield, IN PRO PER
P. O. Box 37165
Houston, Texas 77237
832-969-4135

PLAINTIFF

## AFFIDAVIT OF HELEN TYNE MAYFIELD

STATE OF TEXAS
COUNTY OF HARRIS

I, Helen Tyne Mayfield, state and declare that I am over 21 years of age and fully competent to make the declaration. The facts set forth herein are true and correct and within my personal knowledge. I have read the foregoing complaint, and the facts set forth in the Factual Background section are true and correct with the additional facts included that I ran a Private Substance Abuse Program for seven years at Michigan Health Center and was a panelist on the "Miracles Show on ABC" and a Deed Restriction Expert on radio shows from D.C., Baltimore and New York. There may be a few other omissions that I have forgotten.

Since 2012, I have not worked as an attorney or for any attorney in any capacity nor have I ever even implied as such to anyone. I worked for one month for a few days as a receptionist for Emil Sargent who is a lawyer.

## MORE DEPOSANT SAYETH NOT.

SUBSCRIBED AND SWORN TO BEFORE ME Helen Mayfied on
January 20, 2023.

Helen Tyne Mayfield

Notary Public in and for the State of Texas

JANET JUDITH CEDILLO
Notary Public, State of Texas
Comm. Expires 09-03-2025
Notary ID 133312725